UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH TATE,                                     Case No. 13-11473

          Plaintiff,                        Laurie J. Michelson
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)**

# I.  PROCEDURAL HISTORY

## A.  Proceedings in this Court

On April 1, 2013, plaintiff Sarah Tate filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Thomas L. Ludington referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for supplemental

security income benefits.  (Dkt. 3).[1]  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 12, 15).  Plaintiff also filed a reply brief in

support of her motion.  (Dkt. 16)

_____

[1] On May 6, 2014, this case was reassigned from Judge Ludington to District Judge
Laurie J. Michelson.  (Dkt. 17).

### B.   Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income on October 26, 2010, alleging disability beginning June 1, 2006.  (Dkt. 7-5, Pg ID 192-97). Plaintiff's claims were initially disapproved by the Commissioner on March 9, 2011.  (Dkt. 7-3, Pg ID 141).  Plaintiff requested a hearing and on March 7, 2012, plaintiff appeared, with counsel, before Administrative Law Judge ("ALJ") Tammy A. Thames, who considered the case de novo.  (Dkt. 7-2, Pg ID 72-128). In a decision dated April 13, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 53-63).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 21, 2013, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 21-24); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1988 and was 23 years old at the time of the administrative hearing, and 22 years of age on the date the application was filed.

(Dkt. 7-2, Pg ID 62, 77).  Plaintiff had past relevant work as an assembler and fast food worker.  (Dkt. 7-2, Pg ID 62, 122-23).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since October 26, 2010, the application date.  (Dkt. 7-2, Pg ID 55).  At step two, the ALJ found that plaintiff's bipolar disorder, major depressive disorder, borderline personality disorder, marijuana abuse and alcohol abuse were "severe" within the meaning of the second sequential step, but that plaintiff's cervical spondylosis and supra morbid obesity were non-severe.  (Dkt. 7-2, Pg ID 55-56).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 56-57).

The ALJ determined that plaintiff had the following residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has the ability to understand, remember and perform simple tasks with no production rate pace work, but rather goal oriented work.  She should have no more than occasional interaction with the public or co-workers.

(Dkt. 7-2, Pg ID 57-61).  At Step Four, the ALJ found that plaintiff was not able to perform her past relevant work because the demands of that past work exceed the residual functional capacity.  (Dkt. 7-2, Pg ID 62).  The ALJ then found that jobs

exist in significant numbers in the national economy that plaintiff can perform,

and concluded that plaintiff has not been under a disability since October 26,

2010, through the date of the decision.  (Dkt. 7-2, Pg ID 62-63).

### B.    Plaintiff's Claims of Error

Plaintiff asserts as her first claim of error that the ALJ failed to properly

evaluate the opinion evidence as required by 20 C.F.R. § 416.927.  Plaintiff states

that she attended a consultative examination with Michael Brady, Ph.D., on

February 25, 2010, and he issued a Psychiatric/Psychological Medical Report that

same day.  (Tr. 452-57).  Dr. Brady summarized plaintiff's symptoms and issued

an opinion regarding her limitations, noting:

> Her ability to relate and interact with others, included
> [sic] coworkers and supervisors, is impaired.  She was
> occasionally tearful throughout the evaluation and was in
> obvious distress.  Her depression and distress could
> affect her interpersonal relationships in the workplace.
> Because of her emotional struggles she will struggle to
> complete simple and complex tasks without major
> limitations.  Her ability to maintain concentration is
> impaired.  As a result of her emotional state she may
> often be distracted and her effectiveness and
> performance will likely be limited and slowed.

(Tr. 455-56).  Plaintiff asserts that Dr. Brady also indicated that plaintiff had a

poor prognosis.  (Tr. 456).  According to plaintiff, the ALJ summarized Dr.

Brady's opinion and assigned it little weight because "his findings that the

claimant's functioning was 'impaired,' 'limited,' and 'poor' failed to show

4

specificity as to the occurrence or sustained capacity.  Therefore, this opinion is inconsistent with the overall medical evidence of record."  (Tr. 41).  Plaintiff argues that this reasoning fails to adequately consider Dr. Brady's opinion. Plaintiff contends, first, there is no logical connection between the alleged lack of specificity and a conclusion that his opinion is inconsistent with the medical evidence; a lack of specificity does not equal inconsistency.  Thus, plaintiff continues, what is left is actually two incomplete reasons put forth in the opinion for choosing to assign little weight to the consultative examiner's opinion: that it is not specific enough, and that it is inconsistent.

Plaintiff contends that, with regard to the assertion that Dr. Brady's opinion "failed to show specificity as to the occurrence or sustained capacity" involved in impaired interactions, major limitations in completing even simple tasks, and poor ability to withstand stress, the ALJ failed to supply the necessary explanation. Plaintiff contends that the descriptions provided by Dr. Brady describe the limitations that plaintiff experienced with respect to these specific areas.  Plaintiff agrees that while it is true that Dr. Brady did not phrase his limitations in terms of numbers or percentages, he issued a complete and lengthy report that detailed plaintiff's symptoms and expected limitations in the format traditional for consultative examinations by psychologists, and nothing about Dr. Brady's descriptions was ambiguous, nor was his overall assessment ambiguous, as he

clearly indicated that plaintiff would be distracted and ineffective, would struggle to complete even simple tasks, and her ability to handle normal work stressors was poor. (Tr. 455-56). Plaintiff argues that if the ALJ thought the opinion to be incomplete, she had a duty to "recontact" Dr. Brady "to clarify the issues." SSR 85-16. If there was any question as to what Dr. Brady was trying to convey, those questions should have been addressed to Dr. Brady rather than merely rejecting his report. Plaintiff contends that rejecting a consultative examiner's opinion merely because the ALJ did not believe it contained enough specific information to formulate the RFC does not comply with § 416.927 because it does not adequately consider the doctor's opinion.

Plaintiff also argues that the ALJ's allegation that Dr. Brady's opinion was inconsistent with the medical evidence of record also failed to provide adequate consideration to Dr. Brady's opinion, since it failed to identify any specific inconsistencies. (Tr. 41). Plaintiff contends that without identifying the alleged inconsistencies, a reviewer is unable to assess the adequacy of the ALJ's evaluation. According to plaintiff, the lack of specificity with regard to any inconsistencies is especially troubling in this case because a review of the medical evidence shows that Dr. Brady's opinion was, in fact, supported by the medical records in plaintiff's file. For example, on April 19, 2010, Dr. Kondapaneni noted that plaintiff "continues to present with increasing depression, cry easily," and he

6

observed "her attention and concentration is poor so do [sic] her judgment and insight is poor." (Tr. 263). In a clinical assessment dated March 29, 2010, the plaintiff was noted to have poor concentration and attention, poor decision-making ability, and poor coping ability. (Tr. 338). In April 20, 2011, a clinical assessment indicated plaintiff had poor follow through, poor coping ability, poor decision-making ability, and her performance on serial sevens was "mostly inaccurate." (Tr. 607). On February 29, 2013, Dr. Kondapaneni again conducted a Comprehensive Psychiatric Evaluation, where he observed that plaintiff's "mood is emotional and depressive with crying during interview," while "her attention and concentration is poor, so do [sic] her judgment and insight." (Tr. 719). Plaintiff argues that, overall, the ALJ's decision indicates a lack of consideration of Dr. Brady's opinion. Plaintiff notes that Dr. Brady examined her, created a report detailing the examination, and issued a clear opinion regarding her functional limitations stemming from her mental health diagnoses. Plaintiff argues that the ALJ's failure to adequately consider and evaluate Dr. Brady's medical opinion mandates a remand.

Plaintiff argues, as her second claim of error, that the ALJ failed to perform a proper credibility analysis. Plaintiff contends that when evaluating a claimant's credibility by looking to the treatment recommendations and opinions, "the adjudicator must not draw any inferences about an individual's symptoms and

their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p. Plaintiff states that the SSR notes that some explanations may provide insight into an individual's credibility, specifically citing cases where the "individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96-7p. Plaintiff asserts that the ALJ here mentioned plaintiff's inconsistent use of medication as a factor that negatively impacted her credibility. (Tr. 40). Plaintiff argues, however, that she testified to having problems with obtaining treatment and medication due to lack of insurance. (Tr. 66, 68). Further, plaintiff's mother, who appeared at the hearing, also testified to plaintiff's lack of treatment due to the fact that there were not any resources for her at the time. (Tr. 95). Plaintiff argues that the ALJ, however, did not factor this aspect of plaintiff's situation into the credibility analysis. Plaintiff contends that she should not have been penalized for her inability to afford treatment and medication.

According to plaintiff, another issue that seems to have weighed heavily against her credibility was her attempt to engage in college courses. The ALJ indicated:

> [t]he claimant testified that she is currently a full-time student at Delta College and is taking courses to pursue a degree in Business. In addition, the claimant is a full-

8

> time mother of two small children. The fact that the
> claimant can manage a full-time schedule at home and at
> school, strongly suggests that the claimant's symptoms
> are less severe than alleged and that she could maintain
> sustained full-time employment consistent with the
> residual functional capacity.

(Tr. 41).  Plaintiff argues, however, that a review of her testimony reveals a much

different scenario.  For example, plaintiff testified that in the semester prior to her

hearing, she was enrolled full-time, but that those classes were "preparatory

classes" below college-level.  (Tr. 81-82).  Additionally, plaintiff failed all but one

of her classes that semester.  (Tr. 81).  Plaintiff also testified that at the time of the

hearing, she was taking three less credits than in the previous semester, and that

she was enrolled in the "slower version" of these classes.  (Tr. 59-59).  Plaintiff

also testified to specific problems she experienced at school, including forgetting

her books, zoning out, and crying in the middle of class for no reason.  (Tr. 82-83).

Plaintiff argues that it is clear from her testimony that while she was enrolled in

school, she was not adequately performing, in that she failed multiple remedial

classes and described emotional outbursts while in the middle of class.  Yet

despite plaintiff's testimony regarding her unsuccessful school attempts, the ALJ

pointed to her enrollment in school in order to allege she was capable of full-time

work.  (Tr. 41).  Plaintiff argues that her failure at full-time college does not

suggest that her "symptoms are less severe than alleged," but instead supports her

allegations of disabling symptoms.  Plaintiff contends that due to the ALJ's

mischaracterization of plaintiff's attempts at college, and a failure to explain why

the overwhelming evidence did not support plaintiff's subjective statements

regarding her symptoms, a remand pursuant to Sentence Four is warranted.

### C.   Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's

finding that plaintiff was not disabled because she could perform a significant

number of jobs.  The Commissioner asserts that the ALJ here found that plaintiff

had a severe combination of psychological impairments that significantly affected

her ability to work, but that she nonetheless retained the ability to perform simple

work that did not require production standards or pace requirements and required

no more than occasional contact with others.  (Tr. 35-37).  Considering this

functional capacity, and relying on the testimony of a vocational expert, the ALJ

concluded that plaintiff was not disabled because she could perform a significant

number of jobs despite her functional limitations.  The Commissioner contends

that the ALJ properly determined plaintiff's residual functional capacity (RFC)

in light of all the evidence of record, including the medical opinions, noting that

the determination of an individual's RFC need not be based on a medical opinion

because it is a determination reserved to the ALJ as fact-finder for the

Commissioner.  20 C.F.R. § 416.927(e)(2).  According to the Commissioner, it

was proper for the ALJ to assess all the medical and other evidence and determine plaintiff's residual functional capacity.  The Commissioner continues that, in any event, the ALJ's RFC finding is supported by the opinions of the reviewing state agency psychologist that plaintiff could perform simple tasks on a sustained basis. 20 C.F.R. § 416.927(f)(2)(I) (state agency physicians are "highly qualified physicians" who are also experts in Social Security disability evaluation).

The Commissioner contends that plaintiff's only challenge to the ALJ's residual functional capacity finding is that the ALJ failed to properly evaluate the opinions of one-time consultative examiner Dr. Brady.  The Commissioner responds that, to the contrary, the ALJ considered Dr. Brady's opinions but gave them little weight because of the over-generalized nature of those opinions, which the ALJ found lacked "specificity as to the occurrence or sustained capacity" for specific work-related activities.  (Tr. 41).  The Commissioner argues that it was appropriate and reasonable for the ALJ to instead give great weight to the opinion of the state agency psychologist, who reviewed all the evidence of record, including evidence that plaintiff's condition improved with medication (which she was not taking at the time she saw Dr. Brady), and who rendered a specific functional capacity opinion.  *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (in formulating his hypothetical questions to the VE, the ALJ reasonably relied on the only physician who translated his findings into a specific

11

RFC assessment).  According to the Commissioner, the ALJ reasonably found plaintiff's claims were not totally credible and his finding is entitled to deference. *See* 20 C.F.R. § 416.929(c) (assessing claimants' alleged symptoms); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)) ("court 'may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.'").  The Commissioner contends that an ALJ is not obligated to accept a claimant's alleged limitations, but must consider whether a claimant's complaints, including the limiting effects of pain, are credible, given the evidence of record.  *See* SSR 96-7p, 1996 WL 374186, *1.  The Commissioner states that a court's "role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony."  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Instead, the ALJ is responsible for determining the credibility of a claimant's subjective complaints in determining the RFC, and that determination is entitled to great deference.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004); *Walters*, 127 F.3d at 531.

The Commissioner argues that the ALJ here accounted for many of plaintiff's subjective complaints but reasonably determined that the degree of limitation alleged was not supported by the evidence.  (Tr. 38-41).  In particular, the ALJ considered: plaintiff's noncompliance with medication; the findings that

plaintiff had no more than moderate limitations when taking her medication;

plaintiff's wide range of daily activities, including caring for two young children,

running the household, and attending school part-time; the conservative nature of

plaintiff's treatment; and the relatively modest clinical examination findings.  (Tr.

38-41).  The Commissioner asserts that it is apparent that plaintiff would have

preferred the ALJ to have weighed the evidence differently in this case, but argues

that this Court should decline to substitute its judgment for that of the ALJ on

issues of credibility.  *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230,

1234 (6th Cir. 1993) (ALJ is charged with observing the demeanor and credibility

of witnesses and, as such, his conclusions are entitled to great deference);

*Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988)

(providing that an ALJ's credibility determination is entitled to substantial

deference).  The Commissioner then concludes that the ALJ's decision is

supported by substantial evidence and should be affirmed.

### D.    Plaintiff's Reply Brief

According to plaintiff, one issue is whether the ALJ properly evaluated the

opinion evidence, specifically the medical opinion of consultative examiner Dr.

Michael Brady.  20 CFR 416.927; SSR 96-5p.  The Commissioner stated that the

ALJ "considered Dr. Brady's opinions but gave them little weight because of the

over-generalized nature of those opinions," but plaintiff asserts that this argument

13

fails to address her claims of error.  Plaintiff contends that she previously outlined the ways in which the ALJ's evaluation of Dr. Brady's opinion were incorrect or did not meet the minimum standard of inquiry and analysis in her opening brief, and argues that the Commissioner provides no support for the ALJ's actions other than the restatement of the ALJ's flawed conclusion regarding Dr. Brady's opinion.  Plaintiff argues that the Commissioner provides neither defense nor analysis of plaintiff's claims of error, and further, does not provide any evidentiary support for the ALJ's treatment of Dr. Brady's opinion.  Plaintiff continues that the lack of defense is revealing of the lack of analysis conducted by the ALJ. Plaintiff concludes that due to the ALJ's erroneous assertion that Dr. Brady's opinion lacked specificity, and the vague, unsupported conclusion that his opinion was inconsistent with the medical evidence, a remand is warranted under Sentence Four.

Plaintiff contends that the second issue is whether the ALJ conducted the proper credibility analysis.  Plaintiff argues that while the Commissioner contends that the ALJ reasonably found plaintiff's claims were not totally credible, like plaintiff's argument above, the Commissioner does not address plaintiff's specific claims of error.  Plaintiff asserts that she specifically argued that the ALJ did not follow regulations prohibiting her from using plaintiff's lack of insurance against her credibility, as well as the ALJ's factually erroneous assessment of plaintiff's

attempts to attend college.  However, the Commissioner's entire argument consists of a restatement of the ALJ's findings regarding plaintiff's credibility, ignoring plaintiff's contentions that such findings were made in error.  Plaintiff contends that the Commissioner offers no defense of plaintiff's specific credibility allegations, but instead argues only that the ALJ's credibility analysis was generally acceptable while failing to acknowledge the specific legal and factual errors established by plaintiff.  Plaintiff continues that, like her argument above, the lack of defense of plaintiff's claims here is revealing of the lack of proper analysis conducted by the ALJ.  Plaintiff argues that due to these errors in the credibility analysis, a remand under Sentence Four is warranted.

## III.  DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an

15

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

16

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

17

2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial

gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

20

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

####    1.    The ALJ's evaluation of the consulting examining psychologist's opinion evidence is supported by substantial evidence

Plaintiff claims that the ALJ failed to properly evaluate the opinion  of the

consulting examining psychologist, Dr. Michael Brady.  The Commissioner

responds that the ALJ considered all of the record evidence and assigned

appropriate weight to Dr. Brady's opinion.  In that analysis, the ALJ accorded Dr.

Brady's opinion "little weight," because his functional limitation findings "failed

to show specificity as to the occurrence or sustained capacity" and "his opinion is

inconsistent with the overall medical evidence of record[.]"  (Tr. 41).  The ALJ

gave great weight to the finding of R. Newhouse, M.D., a state agency physician

who reviewed the record and made a determination dated March 1, 2011 that

plaintiff would function best in small, familiar groups and retains the ability to do

simple tasks on a sustained basis. (*Id.*). The ALJ reasoned that Dr. Newhouse is familiar with the disability program and its requirements, and his opinion is consistent with the objective clinical findings and other substantiated evidence of record. (*Id.*). The undersigned concludes, for the reasons set forth below, that the ALJ's analysis of the opinion evidence is supported by substantial evidence.

The ALJ was not required to uncritically accept the conclusions of the one-time examiner, Dr. Brady. As a general rule, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination, and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). However, the opinions of a one-time consultative examiner are not entitled to any particular weight, and certainly are not entitled to "controlling weight," like treating physicians, under the Commissioner's regulations. *Id.* at 376; *see also Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533, 539 (6th Cir. 2014) ("But because Dr. Catt was an examining psychologist–not a treating doctor–his opinion is not entitled to any special deference.") (citing 20 C.F.R. § 416.927(c)(2)). Rather, consulting source opinions are afforded weight according to the factors set forth in 20 C.F.R. § 416.917, including whether they are supported by objective

22

findings, consistent with the record as a whole, and the extent of the physician's

relationship to the claimant (which, in the case of an examining consultant, is only

a one-time examining relationship). *See* 20 C.F.R. § 416.927(c). "Moreover, an

ALJ need only explain its reasons for rejecting a treating source because such an

opinion carries 'controlling weight' under the SSA," and the ALJ is not required

to make that same showing for non-treating sources. *Norris v. Comm'r of Soc.*

*Sec.*, 461 Fed. Appx. 433, 439 (6th Cir. 2012) (citing *Smith v. Comm'r of Soc.*

*Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("the SSA requires ALJs to give reasons

for only *treating sources*") (emphasis in original)); *see also Karger v. Comm'r of*

*Soc. Sec.*, 414 Fed. Appx. 739, 744 (6th Cir. 2011) (the ALJ is not "under any

special obligation to defer to [non-treating physician] opinion[s] or to explain why

he elected not to defer to [them]."); *Thomas v. Comm'r of Soc. Sec.*, 2013 WL

1250649, at *15 (E.D. Mich. Mar. 26, 2013) ("[An ALJ] need not give reasons for

not accepting the report of a non-treating physician. . . . Dr. Menendes, as noted,

was not a treating source. So Judge Patterson was under no obligation to explain

why he accorded Dr. Menendes' opinion only 'some weight.'"), *aff'd* 550 Fed.

Appx. 289 (6th Cir. 2014). "An ALJ is permitted to make . . . resolutions of

conflicting evidence, and there is no specific requirement that this type of decision

be set forth in the same type of detail required when rejecting the opinion of a

treating source." *Jones v. Comm'r of Soc. Sec.*, 2012 WL 5378850, at *5 (S.D.

Ohio Oct. 30, 2012), *adopted by* 2013 WL 556208 (S.D. Ohio Feb. 12, 2013).  The

ALJ is responsible for weighing opinion evidence.  *See Buxton v. Halter*, 246 F.3d

762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 Fed.

Appx. 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative

record, but does not reconsider facts, re-weigh evidence, resolve conflicts in

evidence, decide questions of credibility, or substitute its judgment for that of the

ALJ.").  While the ALJ may not simply ignore the opinions of non-treating

sources, as long as the record contains substantial evidence supporting the ALJ's

evaluation of such an opinion, that evaluation cannot be second-guessed by a

reviewing court.

The undersigned suggests that the ALJ's conclusion that Dr. Brady's

opinion is accorded little weight is supported by substantial evidence.  First, Dr.

Brady saw plaintiff on one occasion, and thus, as a consulting examining

psychologist, as explained above, his opinion is not entitled to any special

deference.  The findings of Dr. Brady were neither ignored nor rejected by the

ALJ.  The ALJ thoroughly discussed Dr. Brady's findings and the record evidence

in her opinion and explained her reason for affording Dr. Brady's opinion only

little weight, finding that Dr. Brady's opinion was not specific as to the occurrence

or sustained capacity for specific work-related activities, and not consistent with

the record as a whole.  (Tr. 38-41).  The ALJ noted that Dr. Brady diagnosed

plaintiff with major depressive disorder, recurrent, severe, without psychotic features, and borderline personality disorder, but also observed that although her mood appeared depressed, she was in contact with reality and her thoughts were spontaneous and well organized, she exhibited no problems in pattern or content of speech and she denied auditory or visual hallucinations or delusions. (Tr. 38-39). Plaintiff was oriented times three and her immediate, recent and past memory were adequate. (*Id.*). The ALJ noted that at follow-up evaluations with her treating psychologist that plaintiff had only moderate symptoms and moderate difficulty in functioning. (Tr. 39). The ALJ thoroughly reviewed the record evidence and noted that there is no evidence that plaintiff required any psychiatric hospitalizations; rather, plaintiff's treatment has been relatively conservative in nature, consisting of psychiatric medications and therapy, which have been relatively effective in controlling plaintiff's symptoms. (Tr. 40). The ALJ noted that when plaintiff is compliant with her medication, her doctors observed her to be attentive, relaxed and fully communicative and she exhibited normal speech and normal mood, without signs of depression or mood elevation (Tr. 38-40, citing Tr. 584-608), and treating sources found her stable with intact cognitive functions, intact concentration, appropriate affect, and moderate depression, with no impairment of short or long term memory. (Tr. 263, 269, 275, 325-36, 336-37). The ALJ further noted that plaintiff also testified that her prescribed psychotropic

medications help her symptoms.  Accordingly, the undersigned concludes that the ALJ's assessment that Dr. Brady's opinion is entitled to little weight is supported by substantial evidence.  *See Spencer v. Comm'r of Soc. Sec.*, 2013 WL 5507332, at *5-6 (N.D. Ohio Oct. 2, 2013) (concluding that since the one-time examining physician's opinion was not supported by his diagnostic and objective medical findings and was contradicted by the evidence of record, the ALJ correctly concluded that his opinion should not be afforded considerable weight).

The ALJ here credited the state-agency reviewing psychologist's opinion because it was more consistent with the record in its entirety.  (Tr. 41).  The undersigned concludes that the ALJ was entitled to accept Dr. Newhouse's evaluation of the severity of plaintiff's impairments in preference to Dr. Brady's.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-15 (6th Cir. 2010) (upholding ALJ's decision not to give weight to non-treating source because the opinion was inconsistent with both the source's own findings as well as the overall record).  Although plaintiff is correct that the opinions of non-treating sources are generally accorded more weight than non-examining sources, it is not a *per se* error of law for the ALJ to credit a non-examining source over a non-treating source.  "Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record."  *Norris*, 461 Fed. Appx. at 439.  The Social Security

regulations recognize that opinions from non-examining state agency consultants, such as Dr. Newhouse, may be entitled to significant weight because these individuals are "highly qualified" and are "experts in Social Security disability evaluation."  20 C.F.R. § 416.927(e)(2)(I); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  The ALJ here found that the opinion of Dr. Newhouse, who reviewed the record evidence and issued an opinion dated March 1, 2011 that plaintiff retains the ability to do simple tasks on a sustained basis, was entitled to great weight because "Dr. Newhouse is familiar with the disability program and its requirements" and "his opinion is consistent with the objective clinical findings and other substantial evidence of record."  (Tr. 41).  This finding is supported by substantial evidence.

Therefore, the undersigned concludes that the ALJ properly discussed the medical and testimonial evidence of record, reached a reasoned decision that was supported by substantial evidence, and articulated the basis for that decision.  The Regulations simply do not mandate that the ALJ accord Dr. Brady's evaluation greater weight.  Accordingly, plaintiff's claim of error regarding the ALJ's evaluation of the consulting examiner's opinion fails.

### 2.    The ALJ's credibility assessment is supported by substantial evidence

Plaintiff also claims that the ALJ's credibility analysis is flawed and is not

based on a proper characterization of record evidence.  However, credibility

determinations concerning a claimant's subjective complaints are peculiarly within

the province of the ALJ.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d

589, 592 (6th Cir. 1987).  "It [i]s for the [Commissioner] and his examiner, as the

fact finders, to pass upon the credibility of the witnesses and weigh and evaluate

their testimony."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.

2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  As

the Sixth Circuit has held, determinations of credibility related to subjective

complaints of pain rest with the ALJ because "the ALJ's opportunity to observe

the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)

(citation omitted).  "Upon review, [the court must] accord to the ALJ's

determinations of credibility great weight and deference particularly since the ALJ

has the opportunity, which [the court] d[oes] not, of observing a witness's

demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

Cir. 2003).  Thus, an ALJ's credibility determination will not be disturbed "absent

compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ

is not required to accept the testimony of a claimant if it conflicts with medical

reports, the claimant's prior statements, the claimant's daily activities, and other

evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531

28

(6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is in issue,

after the ALJ finds a medical condition that could reasonably be expected to

produce the claimant's alleged symptoms, he must consider "the entire case

record, including the objective medical evidence, statements and other information

provided by treating or examining physicians . . . and any other relevant evidence

in the case record" to determine if the claimant's claims regarding the level of his

pain are credible.  SSR 96-7p, 1996 WL 374186, at *1; *see also* 20 C.F.R.

§ 416.929.  Consistency between the plaintiff's subjective complaints and the

record evidence 'tends to support the credibility of the [plaintiff], while

inconsistency, although not necessarily defeating, should have the opposite

effect."  *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir.

2011).

　　　In the view of the undersigned, the ALJ's finding that the objective record

evidence does not support plaintiff's claims of disabling limitations is supported

by substantial evidence.  The ALJ's credibility determination is thorough, detailed

and amply supported by the record.  The ALJ properly looked at the medical

opinion evidence, including the evaluations by treating and consulting

psychologists, and plaintiff's daily activities as undermining the claimed severity

of plaintiff's symptoms.  The ALJ acknowledged that plaintiff's treatment has

been relatively conservative in nature, consisting of psychiatric medications and

therapy, and that the treatment has been relatively effective in controlling plaintiff's symptoms. (Tr. 40-41). The ALJ acknowledged that plaintiff complained of worsening depression and sleep difficulties while not treating, but that the record suggests that, when compliant with treatment recommendations, plaintiff's doctor observed her to be attentive, relaxed and fully communicative, with normal speech and normal mood, and without signs of depression or mood elevation. (Tr. 40, citing Tr. 584-608). Plaintiff claims that the ALJ erred in discussing plaintiff's occasional lack of compliance with treatment recommendations, but the undersigned concludes that the ALJ properly noted that plaintiff's symptoms improved with compliance.

The ALJ also properly considered plaintiff's daily activities and found that, contrary to plaintiff's testimony that she performed few activities of daily living, the medical evidence indicated that she performed a much wider array of such activities, including preparing simple meals, taking care of her personal needs, shopping for groceries, caring for her children, taking public transportation, and attending college classes.[2] (Tr. 41). The ALJ found these activities consistent

---

[2] Plaintiff argues that she testified that although she was enrolled as a full-time student, she was not adequately performing in school, and that this unsuccessful school attempt does not support the ALJ's credibility finding, but instead supports her allegations of disabling symptoms. The ALJ found that "[t]he fact that the claimant can manage a full-time schedule at home and at school, strongly suggests that the claimant's symptoms are less severe than alleged and that she could maintain sustained full-time employment *consistent with the residual functional capacity*." (Tr. 41 (emphasis added)). The undersigned notes that the ALJ did not equate plaintiff's status as a full-time student with a finding of no limitations, but rather as consistent with the RFC to

with the assigned RFC and her ability to work.  The ALJ further noted that

plaintiff's work history is not entirely consistent with her alleged symptoms and

limitations, noting that plaintiff worked after her alleged onset date (although this

work activity did not constitute substantial gainful activity), and that plaintiff's

impairments were present prior to her alleged onset date and apparently did not

prevent her from working at that time.  (Tr. 40).  It is well-settled that "[i]n

evaluating a claimant's impairments, and their impact on daily activities, an ALJ

may consider the claimant's ability to work in the past notwithstanding them."

*See Johnson v. Comm'r of Soc. Sec.*, 2011 WL 1627946, at *7 (E.D. Mich. Mar.

31, 2007) (citing *Swann v. Chater*, 1996 WL 408508, at *5 (6th Cir. July 19,

1996) ("Claimant's ability to work despite these physiological conditions militates

against his claim that these conditions were disabling.")), *adopted by* 2011 WL

1629664 (E.D. Mich. Apr. 29, 2011).  "Any work done during a period of claimed

disability may show a claimant can engage in substantial gainful activity."  *Mullis*

*v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988) (citing 20 C.F.R. §§ 404.1571,

404.1520); *see also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1029

(6th Cir. 1990) (same).  As the regulations provide, "[e]ven if the work you have

---

perform simple work with no production rate pace work and no more than occasional interaction
with the public or co-workers.  (*Id.*). This finding is supported by substantial evidence.  The
undersigned further notes that this is just one factor that the ALJ noted in assessing plaintiff's
credibility.

done was not substantial gainful activity, it may show that you are able to do more work than you actually did. . . ."  20 C.F.R. § 404.1571; *see also* 20 C.F.R. § 404.1512(b) (listing "your efforts at work" as relevant evidence for consideration); *Ashworth v. Sullivan*, 1991 WL 278961 (6th Cir. Dec. 30, 1991) (noting the ALJ properly considered the claimant's part-time work, even though it did not qualify as "substantial gainful activity").  Thus, "[t]here is nothing inconsistent with finding that [plaintiff's] work did not amount to substantial gainful activity, but nevertheless considering it relevant in evaluating his credibility and RFC."  *See Norris v. Astrue*, 2011 WL 588349, at *5 (E.D. Ky. Feb. 10, 2011) (citing 20 C.F.R. §§ 404.1571 and 404.1512(b)), *aff'd*, 461 Fed. Appx. 433 (6th Cir. 2012); *see also Fenner v. Comm'r of Soc. Sec.*, 2013 WL 2253573, at *6 (S.D. Ohio May 22, 2013) (finding the ALJ properly considered plaintiff's employment history after his alleged disability onset date, even if it was an unsuccessful work attempt), *adopted by* 2013 WL 3168645 (S.D. Ohio June 20, 2013); *Raber v. Comm'r of Soc. Sec.*, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (plaintiff's reported multiple part-time jobs during the time she alleged she was disabled were relevant to show that she was able to do more work, even if the work was not considered substantial gainful activity).  Accordingly, the undersigned suggests that the ALJ properly considered plaintiff's work history in assessing her credibility.

Thus, while the medical evidence indicates that plaintiff does have severe impairments as noted by the ALJ, it does not specifically support plaintiff's testimony regarding the extent of her limitations. Indeed, there is evidence to support the ALJ's finding that plaintiff retained the ability to perform simple work that did not require production standards or pace requirements and required no more than occasional contact with others, and thus there is substantial evidence to support the ALJ's finding that plaintiff was not fully credible, and the plaintiff's claim of error should be denied. Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."). The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*,

825 F.2d 98, 100 (6th Cir. 1987). The undersigned concludes that the ALJ's findings here are within that "zone of choice" and thus supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 31, 2014                        s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 31, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov

35